

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| BRETT PAES, | ) | |
| | ) | |
| Appellant, | ) | WD81599 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | February 13, 2019 |
| BEAR COMMUNICATIONS, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Kenneth R. Garrett III, Judge

Before Special Division: Zel M. Fischer, Special Judge, Presiding, Cynthia L. Martin, Judge and Gary D. Witt, Judge

Brett Paes ("Paes") appeals from a judgment setting aside a default judgment entered against Bear Communications, LLC ("Bear Communications"). Paes argues that the trial court's judgment is erroneous because Bear Communications failed to demonstrate that it had good cause for failing to timely respond to Paes's petition. Finding no error, we affirm.

### Factual and Procedural Background

On April 6, 2017, Paes filed suit against Bear Communications in the Circuit Court of Jackson County, claiming he was wrongfully terminated in retaliation for pursuing

workers' compensation treatment and benefits. Paes had been performing work for Baer Communications in Missouri as a project manager.

Paes unsuccessfully attempted to serve process on Bear Communications at the office of the Missouri registered agent designated for Bear Communications with the Missouri Secretary of State's office. On May 3, 2017, a private process server successfully served Bear Communications by delivering a copy of the summons and petition on Marty Lund ("Lund"), the director of finance, at Bear Communications' headquarters in Lawrence, Kansas. Notice of a scheduled case management conference accompanied the summons and petition. Paes filed proof of service on June 19, 2017, noting service of process on Bear Communications at the Kansas address.

Bear Communications did not file an answer to the petition, and failed to appear at the case management conference scheduled for August 7, 2017. The case was set for a default hearing on September 6, 2017. The trial court sent Bear Communications notice of the default hearing. The notice was mailed to the Missouri registered agent's office where Paes had unsuccessfully attempted service of process on Bear Communications.

Bear Communications did not appear at the September 6, 2017 default hearing. Accordingly, the trial court entered a default judgment in favor of Paes, and awarded Paes damages in the amount of $200,000, plus costs and post-judgment interest at the statutory rate. The trial court mailed notice of the default judgment to the same Missouri registered agent's address to which notice of the default hearing had been sent.

On November 1, 2017, Bear Communications learned of entry of the default judgment when it received a copy of Paes's notice of registration of the Missouri default

2

judgment in Kansas. On December 13, 2017, Bear Communications filed a motion to set aside the default judgment with suggestions in support ("Motion to Set Aside"). The Motion to Set Aside, which was supported by affidavits, argued that Bear Communications "has a meritorious defense to [Paes's] claim and can establish good cause for its failure to respond to [Paes's] Petition." The Motion to Set Aside asserted that Bear Communications had a meritorious defense because Paes was released from employment when the company's work in the Kansas City area was completed, and Paes refused a transfer to Nashville, the site of the company's next project. The Motion to Set Aside asserted that Bear Communications had good cause for failing to answer Paes's petition because of an "internal mishap." According to the Motion to Set Aside, "[u]pper management believed that [an] employee was handling the response, and did not learn of his failure to do so until after the employee was terminated for unrelated performance issues."

Bear Communications supported its Motion to Set Aside with an affidavit by Brett Niles ("Niles"), the founder and chief executive officer of the company. Niles's affidavit acknowledged that Lund accepted service of Paes's petition on May 3, 2017; noted that Bear Communications received Paes's petition "during a very tumultuous time at the company, which included multiple setbacks in several projects in several states and the departure of numerous key employees"; explained that Lance Addison ("Addison"), the company's then-president, had been tasked with handling Paes's petition; and explained that the company had recently secured employment liability insurance which it believed would have covered the claim.

3

Niles's affidavit noted that at the end of August 2017, Bear Communications terminated Addison's employment for performance-related reasons, and that Addison left the company without transitioning any of his projects. As a result, Niles was unaware that Addison had failed to address Paes's petition. According to Niles's affidavit, if Bear Communications' upper-level managerial employees had known that Addison had not addressed Paes's petition, they would immediately have taken steps to do so. Niles's affidavit explained that Bear Communications did not realize that Paes's petition had not been addressed until November 1, 2017, when Niles learned that Paes was registering the Missouri default judgment in Kansas.

Paes argued in suggestions in opposition ("Suggestions in Opposition") to the Motion to Set Aside that Bear Communications had not presented credible evidence establishing a meritorious defense. Paes also argued that Bear Communications had not established that it had good cause for failing to timely respond to the petition. Paes argued that Bear Communications' failure to respond to the petition reflected a pattern of reckless conduct by upper-level managerial employees. Paes argued that Bear Communications "intentionally and knowingly maintain[ed] a sham corporate Registered Agent office designed to help[] shield [it] from legal notices and service of summons and garnishments in Missouri," and attached a document from the Missouri Secretary of State's office demonstrating that Bear Communications had maintained the incorrect address for its Missouri registered agent for over five years. Paes argued that as a result, in twenty-four cases in which Bear Communications was named as a party, summons was initially issued to an incorrect registered agent where service could not be had. Paes also argued that

4

Niles's affidavit contained false statements and fabrications, and referred to correspondence between Addison and Bear Communications' and its counsel to challenge the veracity of Niles's affidavit.

Paes's Suggestions in Opposition alternatively argued that even if the trial court found Niles's affidavit to be credible, it failed to establish good cause. Paes argued that Bear Communications' failure to respond to the petition reflected the company's pattern of permitting the entry of default judgments as a litigation tactic. Paes noted that based on Niles's affidavit, at least five upper-level managerial employees knew of Paes's petition, yet no one ever inquired of Addison about the status of the claim. Paes argued:

> At best, the Niles Affidavit establishes that [Bear Communications] is an extremely careless and reckless company that either does not have any standard operating procedures to handle litigation or it totally botched execution of those procedures--either way, [Bear Communications] abrogated its responsibility to respond to pending litigation and [Bear Communications'] conduct is inexcusable for a company with its experience, and sophistication.

Bear Communications was granted leave to file reply suggestions ("Reply Suggestions"). The Reply Suggestions argued that Bear Communications did not recklessly and deliberately seek to impede the legal process. The Reply Suggestions noted that although Bear Communications had been inattentive in updating the address for its Missouri registered agent, the address for its headquarters in Lawrence, Kansas was readily accessible information, as demonstrated by the fact that the company was successfully served at that address by Paes, and by the fact the company had regularly received service of process at that address. The Reply Suggestions noted that while two default judgments had previously been entered against Bear Communications, both cases sought little

5

recovery, and both judgments were satisfied in full. Bear Communications thus argued that the prior default judgments were not indicative of a litigation tactic or a pattern of evading legal process. Bear Communications argued that Paes unfairly failed to alert the trial court that written notices were being sent to an address where Paes knew the company could not be found, and that was different from the address Paes used to successfully serve process on the company.

The Reply Suggestions also noted that Paes's references to Addison's correspondence with Bear Communications and its counsel were incomplete. Bear Communications attached the entirety of Addison's correspondence with the company's counsel, which included Addison's acknowledgment that "[k]nowing the extent of disorganization at Bear [Communications], it's feasible that this matter fell through the cracks. It's even possible that [two upper-level managerial employees] are covering their asses due to their negligence in handling this matter by providing you with disinformation." A summary of a conversation between Addison and Bear Communications' counsel was also attached to the Reply Suggestions. The summary noted that Addison reported it had always been Bear Communications' intent to respond to Paes's petition, and that Addison instructed the company's vice president for corporate assurance and compliance to submit Paes's petition to the company's insurance carrier. Since that did not happen, Addison believed the petition "slipped through the cracks due to . . . someone else not doing what they were supposed to do."

The Reply Suggestions attached an additional affidavit from Mitch Patterson ("Patterson"), the vice president of corporate assurance and compliance for Bear

6

Communications, to support the claim that the company always intended to respond to Paes's petition. In his affidavit, Patterson stated that he was copied on an email from Addison to Bear Communications' vice president for human resources, Sean Beaver ("Beaver"). That email directed Beaver to ask Patterson to submit the claim to Bear Communications' insurance broker. Patterson's affidavit said that he compiled the relevant documents and put them in a file. Patterson's affidavit indicated that because the case was not a workers' compensation claim, he mistakenly believed Addison would thereafter take care of submitting the claim. Patterson's affidavit concluded that while Bear Communications always intended to defend Paes's suit, "internal miscommunications or misunderstandings caused [Bear Communications'] failure to respond."

The Reply Suggestions also attached a supplemental affidavit from Niles. Niles reiterated that he entrusted Addison with responding to Paes's petition, and that he agreed with Addison's statement that Bear Communications always intended to defend the suit but that it must have "slipped through the cracks." Niles's supplemental affidavit said that no employee of Bear Communications "made a deliberate choice to ignore the suit, risk the entry of default in this case, or otherwise impede the work of the Court."

Paes was granted leave to file a sur-reply ("Sur-Reply"). The Sur-Reply reiterated Paes's arguments in the Suggestions in Opposition. The Sur-Reply attached an affidavit from Addison which stated that Addison was not the "exclusive person" responsible for coordinating Bear Communications' response to litigation and that he recalled Bear Communications being served with Paes's petition.

7

After considering this record, the trial court issued an order on March 14, 2018, granting the Motion to Set Aside the default judgment. The order was later denominated a "judgment" on March 26, 2018 ("Judgment"). The Judgment stated:

> [Bear Communications] states that, due to an error in belief that an employee was handling the case, [Bear Communications] was not notified of the filing of the lawsuit. [Bear Communications] argues that the employee who was responsible for handling legal claims was fired during the Answer period to the Petition and [Bear Communications] believed the matter was handled by said employee when, in fact, no response was made. [Bear Communications] further argues that notice regarding the default hearing was delivered to an improper address and was not received by [Bear Communications]. [Paes] responds that [Bear Communications'] conduct was reckless and aimed to impede the judicial process by knowingly leaving its Missouri registered agent address out of date. In light of the discretion afforded to the Court to set aside default judgments and the mistake made by [Bear Communications], the Court finds [the Motion to Set Aside] should be **GRANTED**.

Paes appeals.

## Standard of Review

Rule 74.05(d) provides that a motion to set aside a default judgment "is an independent action." Because a motion to set aside a default judgment is an independent action, "'a judgment granting or denying such a motion is a final judgment eligible for immediate appellate review.'" *City of Kansas City v. Ross*, 508 S.W.3d 189, 193 (Mo. App. W.D. 2017) (quoting *Cook v. Griffitts*, 498, S.W.3d 855, 858 (Mo. App. W.D. 2016)).

The trial court has discretion to rule upon a motion to set aside a default judgment. *Wanda Myers Living Trust v. Nea Lg Le*, 459 S.W.3d 517, 521 (Mo. App. W.D. 2015). As such, we review the trial court's decision to side aside a default judgment for abuse of discretion. *Saturn of Tiffany Springs v. McDaris*, 331 S.W.3d 704, 709 (Mo. App. W.D.

8

2011). "'The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful consideration.'" *Id.* (quoting *Peters v. Gen. Motors Corp.*, 200 S.W.3d 1, 23 (Mo. App. W.D. 2006)). "'Missouri appellate courts have traditionally afforded significant deference to the [trial] court's decision to set aside a default judgment because of the public policy favoring the resolution of cases on the merits and the distaste our system holds for default judgments.'" *Id.* (quoting *Brungard v. Risky's Inc.*, 240 S.W.3d 685, 686 (Mo. banc 2007)). Thus, an appellate court is more likely to reverse a judgment denying a motion to set aside than a judgment granting that relief. *Id.*

**Analysis**

Paes asserts a single point on appeal. He argues that the trial court erred in setting aside the default judgment because Bear Communications did not establish good cause for failing to respond timely to Paes's petition. In separately delineated subpoints, Paes argues that Bear Communications did not establish good cause because: (1) its history of prior default judgments demonstrated that it knew of the consequences of failing to answer a petition, rendering the failure to respond to Paes's petition inexcusable; (2) its failure to update its Missouri registered agent's address recklessly impeded judicial process; (3) it had a culture of reckless inattention, demonstrated by the failure of the company's upper-level managerial employees to adopt policies and procedures to follow after being served with a petition; and (4) it failed to prove what, if anything, prevented Addison from timely responding to Paes's petition. Though structured with subpoints, Paes's point relied

9

collectively asserts a single claim of error--that based on the record before the trial court, it was an abuse of discretion to conclude that Bear Communications established good cause for its failure to respond to Paes's petition.

Rule 74.05(d) provides that "[u]pon motion stating facts constituting a meritorious defense and for good cause shown, an interlocutory order of default or a default judgment may be set aside." The party seeking to set aside a default judgment bears the burden to prove both the "good cause" and "meritorious defense" elements. *Saturn of Tiffany Springs*, 331 S.W.3d at 709. The failure to establish either element requires a motion to set aside to be denied. *Id.*

On appeal, Paes does not challenge the trial court's finding that Bear Communications established it has a meritorious defense to the claim asserted in Paes's petition. Paes's point on appeal is limited to challenging the finding that Bear Communications established good cause.

"Good cause" is defined by Rule 74.05(d) as "includ[ing] a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." "'Good cause should be given a liberal interpretation and includes good faith mistakes and even negligence in failing to file a timely answer.'" *Lee v. Lee*, 449 S.W.3d 383, 385 (Mo. App. W.D. 2014) (quoting *Dozier v. Dozier*, 222 S.W.3d 308, 313 (Mo. App. W.D. 2007)). Recklessness, however, includes "'mak[ing] a conscious choice of [a] course of action, either with knowledge of the serious danger to others involved in it or with knowledge of the facts which would disclose the danger to a reasonable man.'" *Id.* (quoting *Dozier*, 222 S.W.3d at 313). "If there is a reasonable doubt as to whether conduct was intentionally

10

designed or irresponsibly calculated to impede the work of the courts, it should be resolved in favor of good faith." *Saturn of Tiffany Springs*, 331 S.W.3d at 709. As such, "[i]n a close case, deference must be afforded to the trial court's determination about whether conduct is excusable or reckless." *Id.* at 709-10 (citing *Bell v. Bell*, 849 S.W.2d 194, 198 (Mo. App. W.D. 1993)).

Consistent with settled jurisprudence addressing the construction and application of the definition of "good cause," we conclude that the trial court did not abuse its discretion when it concluded that Bear Communications' failure to timely respond to Paes's petition was the result of a mistake or conduct that was not intentionally or recklessly designed to impede the judicial process. Paes obviously disagrees with this conclusion, as his brief repeats the evidence and arguments he presented to the trial court, which we have summarized above. However, Paes's regurgitation of the arguments he made before the trial court ignores our standard of review. Our role as a court of review is "not to hear evidence and, based thereon, to make an original determination." *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978). Instead, our charge is to "to examine asserted error in the trial court which is of such a nature that the complaining party is entitled to a new trial or outright reversal or some modification of the judgment entered." *Id.* Here, that requires us to show deference to the trial court's determination that Bear Communications established good cause unless Paes establishes that the conclusion was clearly against the logic of the circumstances or was so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration. Paes cannot sustain this burden.

The trial court reviewed affidavits which supported the conclusion that when Bear Communications was served with Paes's petition, the company was experiencing turmoil and was inexperienced in making claims under a newly purchased employment practices liability insurance policy. According to the affidavits, Bear Communications had always intended to respond to Paes's petition but failed to do so mistakenly. Niles, the company's founder and chief executive officer, characterized the company's default as a "mistake that resulted from internal miscommunications and misunderstandings" and "not a 'tactic' to somehow avoid the consequences of the suit." While Paes highlights contrary evidence that could have supported an alternative conclusion, at best the contrary evidence creates a reasonable doubt as to whether Bear Communications' mistake or conduct was intentionally or recklessly designed to impede the judicial process. "Where a reasonable doubt exists as to whether the conduct was intentionally designed or irresponsibly calculated to impede the work of courts, it should be resolved in favor of good faith." *Myers v. Pitney Bowes, Inc.*, 914 S.W.2d 835, 839 (Mo. App. S.D. 1996); *see also Saturn of Tiffany Springs*, 331 S.W.3d at 709-10. The trial court therefore did not abuse its discretion when it resolved conflicting evidence to conclude that Bear Communications' mistakes and internal mishaps were not intentional, reckless, or designed to impede judicial process.

We acknowledge that in the first of Paes's four subpoints, Paes argues that a judgment debtor's prior default judgments preclude a finding of good cause as a matter of law. Paes cites *Krugh v. Hannah*, 126 S.W.3d 391 (Mo. banc 2004), for this proposition. While *Krugh* did involve the reversal of a trial court's finding of good cause sufficient to

set aside a default judgment, and while the record in *Krugh* did include evidence of prior default judgments entered against the judgment debtor, *Krugh* did not hold that evidence of prior default judgments precludes a finding of good cause as a matter of law. *Krugh* noted that prior default judgments supported a "conclusion that [the judgment debtor] was well aware of the consequences of . . . inattention" making the "failure to file more egregious than excusable." *Id.* at 393. But of particular concern to the Court in *Krugh* was the fact that: (i) the judgment debtor was gratuitously notified that her answer was several weeks overdue but still waited nearly two weeks to contact her insurer; and (ii) there was no evidence that the judgment debtor took any action whatsoever in an effort to defend herself during the thirty-day period before default. *Id.* The Court distinguished cases where good cause was found to have been established, noting that in each, some evidence indicated that "the defendant[] had at least taken some action in their defense within the 30-day period before default." *Id.* Here, the affidavits from Bear Communications supported that once served, Bear Communications fully intended to defend Paes's petition and turned the petition over to Addison for handling. The affidavits from Bear Communications supported the conclusion that Addison believed he had instructed other personnel in the company to prepare the necessary paperwork for submission of Paes's petition to Bear Communications' insurer. Though mistakes were plainly made over which Bear Communications exercised control, substantial evidence supported the conclusion that Bear Communications did not intentionally or recklessly impede judicial process by ignoring Paes's petition altogether during the thirty-day period before default. *Krugh* is not

13

controlling, and did not require the trial court to find the absence of good cause as a matter of law.

We need not further address the arguments raised in Paes's second, third, or fourth subpoints, as Paes does not argue, nor cite case law to support, that the evidence referred to in these subpoints, all of which was considered by the trial court, required a finding of the absence of good cause as a matter of law.[1]

Paes's point on appeal is denied.

## Conclusion

The Judgment setting aside the default judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

---

[1]Paes's fourth subpoint also argues that "many of the crucial facts cited in the Judgment are wrong and contrary to the uncontroverted facts" so that the "[J]udgment is arbitrary, capricious and not based on careful consideration of the facts before the court." [Appellant's Brief, p. 49] Paes's point relied on did not raise as a claim of error that the Judgment includes specific factual findings that are not supported by the record. "'We do not review arguments and issues raised in the argument under a point that are not fairly encompassed by that point.'" *Johnson v. Mo. Dep't of Corr.*, 534 S.W.3d 869, 873 (Mo. App. W.D. 2017) (quoting *Nichols v. Div. of Emp't Sec.*, 399 S.W.3d 901, 904 (Mo. App. W.D. 2013)). In any event, even were to review and attribute merit to this unpreserved claim of error (which we do not), where no findings of fact or conclusions of law have been requested by the parties as permitted by Rule 73.01(c), the trial court is assumed to have made findings consistent with the result reached. Rule 73.01(c); *Spencer Reed Group, Inc. v. Pickett*, 163 S.W.3d 570, 573 (Mo. App. W.D. 2005). Thus, even without the specific factual findings Paes challenges, the record would nonetheless support the trial court's finding of good cause.