

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

370/MISSOURI BOTTOM ROAD/      )      No. ED109876
TAUSSIG ROAD COMMUNITY      )
IMPROVEMENT DISTRICT, AND 370/      )
MISSOURI BOTTOM ROAD/TAUSSIG      )
ROAD TRANSPORTATION      )
DEVELOPMENT DISTRICT,      )
     )
        Respondents,      )      Appeal from the Circuit Court of
     )      of St. Louis County
vs.      )      20SL-CC02757
     )
ICE ZONE PARTNERS, LLC,      )      Honorable Joseph L. Walsh III
     )
        Appellant.      )      Filed: April 26, 2022

Michael E. Gardner, P.J., James M. Dowd, J., and Lisa P. Page, J.

### Opinion

Ice Zone Partners, LLC., (Ice Zone) appeals the trial court's denial of its motion to set

aside the default judgment entered against it and in favor of Respondents Missouri

Bottom/Taussig Road Community Improvement District (MB-CID)[1] and 370 Missouri Bottom

---

[1] Generally, a CID is a local special taxing district that collects revenue within its designated
boundaries to pay for special public facilities, improvements, or services. CIDs are created by
ordinance of the local municipality's governing body. A CID is a separate political subdivision
with the power to impose and collect special assessments and sales taxes. *See* Office of
Innovative Program Delivery, *Community Improvement Districts, Missouri,* available at
https://www.fhwa.dot.gov/ipd/pdfs/value_capture/strategies_in_practice/mo_community_improv
ement_districts.pdf

Road/Taussig Road Transportation Development District (MB-TDD),[2] on Respondents' suit arising from Ice Zone's failure to pay tax assessments levied by Respondents for the years 2017, 2018, 2019, and 2020. Ice Zone argues that the trial court abused its discretion in failing to set aside the default judgment because Ice Zone demonstrated it had good cause for going into default and likewise that it had a meritorious defense to the underlying claims. Finding no abuse of discretion, we affirm because the record before the trial court showed that Ice Zone's registered agent acted recklessly when after this case was filed, he left town and knowingly failed to check his mail for nearly six months during which time Respondents served him with their first amended petition which Ice Zone failed to timely answer.

## Background

The underlying litigation here represents the second time Respondents have sued Ice Zone for its failure to pay unpaid tax assessments. On September 5, 2019, Respondents filed a petition in the trial court over Ice Zone's unpaid assessments for 2018.[3] While that case was pending, Respondents brought the present suit on May 15, 2020, for Ice Zone's past due assessments from 2017, 2018 and 2019, along with interest and penalties.

On June 4, 2020, Ice Zone's registered agent Lloyd Ney was properly served with the original petition and summons in this case. Thereafter, representatives of Ice Zone and Respondents engaged in email communications regarding a potential resolution of the dispute.

---

[2] A TDD may be created by the Missouri Highways & Transportation Commission, if the project involves any of the state's highways or transportation system, to fund or operate one or more projects that would assist the promotion, design, construction, improvement, or operations of this infrastructure. Funding a TDD is accomplished through an add-on sales or property tax and/or real property special assessments. *See* Missouri Department of Economic Development, *Local Incentive Programs*, Transportation Development District, available at https://ded.mo.gov/community/local-programs

[3] The case was dismissed without prejudice on September 10, 2021.

Ice Zone did not file an answer to the original petition. In November 2020, Ney left Missouri for approximately six months. Meanwhile, on February 11, 2021, Respondents filed their first amended petition in which they added Ice Zone's unpaid assessments for 2020 such that they were now seeking four years' worth of unpaid assessments, interest, and penalties.

On March 9, 2021, Respondents sent by regular mail the first amended petition to registered agent Ney at the same address where he was served with the original petition and summons. On March 22, Respondents filed their motion for default judgment accompanied by the affidavit of Respondents' employee documenting the basis and amounts of Ice Zone's unpaid assessments for each of the four years alleged to be owed in the first amended petition. On April 13, Respondents filed their notice of hearing for April 28, and mailed copies of the motion and notice to Ney. The day before the hearing, Respondents' counsel telephoned Ney to tell him that the matter was set for the entry of default judgment the next day.

At the hearing, the trial court found that Ice Zone was in default for failing to timely file its answer to Respondents' first amended petition. The court then heard evidence on damages and entered a default judgment in favor of Respondents. As to MB-CID, the court awarded damages in the amount of $17,712.85 representing Ice Zone's unpaid assessments, interest, and penalties for the years 2017, 2018, 2019, and 2020. As to MB-TDD, the court awarded $266,766.49 for the unpaid assessments, interest, and penalties for 2018, 2019, and 2020. No representative of Ice Zone was present. Respondents pursued execution on the judgment through a levy and notice of sheriff's sale, copies of which Respondents mailed to Ney on June 23, 2021.

On July 2, Ice Zone filed its Rule 74.05(d)[4] motion to set aside the default judgment asserting that it had good cause and a meritorious defense. For its good cause allegation, Ice

---

[4] All rule references are to the Missouri Supreme Court Rules (2020).

3

Zone stated that it did not file an answer because it relied on representations of Respondents' counsel that the parties were pursuing settlement and therefore the litigation was effectively stayed and an answer not required. Ice Zone also relied on registered agent Ney's extended absence to justify its failure to file an answer based on his claim that he did not receive the first amended petition until after the default judgment was entered.

On July 7, 2021, the trial court heard and denied Ice Zone's motion to set aside the default judgment and entered judgment accordingly. This appeal follows.

## Standard of Review

The decision whether to grant a motion to set aside a default judgment is governed by the sound discretion of the trial court and an appellate court will interfere with that discretion only if the record convincingly demonstrates abuse. *Brungard v. Risky's, Inc.*, 240 S.W.3d 685, 687-88 (Mo. banc 2007). An abuse of discretion occurs when the "ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful consideration." *Vogel v. Schoenberg*, 620 S.W.3d 106, 111 (Mo. App. W.D. 2021). Appellate courts accord more deference to the circuit court's decision to set aside a default judgment and "are more likely to reverse a judgment denying a motion to set aside a default judgment than one granting relief." *Id.* However, an appellate court defers to the trial court's credibility determinations and the weight it gives the evidence. *Id.*, citing *Hanlon v. Legends Hosp., LLC*, 568 S.W.3d 528, 532 (Mo. App. E.D. 2019). We presume all factual issues were settled in support of the judgment. Rule 73.01(c); *In re Marriage of T.B.G v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). "[Q]uestions of law relating to the authority of the trial court to enter default judgment are reviewed *de novo*." *Agnello v. Walker*, 306 S.W.3d 666, 676 (Mo. App. W.D. 2010), as modified (Apr. 27, 2010).

4

**Discussion**

1.    **The trial court did not abuse its discretion in denying Ice Zone's motion to set aside the default judgment because Ice Zone failed to satisfy the good cause element of its Rule 74.05(d) motion.**

Ice Zone claims the trial court abused its discretion in denying its motion to set aside the default judgment because (1) it was timely filed well within one year, (2) it demonstrated good cause in that it believed based on certain assurances by Respondents' counsel that no answer or responsive pleading was necessary, and (3) it demonstrated a meritorious defense to Respondents' claims.

Rule 74.05(d) provides that a default judgment may be set aside "[u]pon motion stating facts constituting a meritorious defense and for good cause shown," so long as the motion to set aside is filed within a reasonable time, not to exceed one year after the entry of the default judgment. *Vogel*, 620 S.W.3d at 111. Thus, as the party seeking to set aside the default judgment, Ice Zone had the burden to prove it had both a meritorious defense to Respondents' claims and that it had good cause for its default. *Id.* The failure to prove either element requires denial of the motion. *Id.* Rule 74.05(d) defines "good cause" to include a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process. *Id.* Recklessness, which would not constitute good cause pursuant to Rule 74.05(d), includes "making a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of the facts which would disclose danger to a reasonable man." *Paes v. Bear Commc'ns, LLC*, 568 S.W.3d 52, 59 (Mo. App. W.D. 2019) (quoting *Lee v. Lee*, 449 S.W.3d 383, 385 (Mo. App. W.D. 2014)).

Based on our review of the record before the trial court, we find no abuse of discretion in denying Ice Zone's motion to set aside the default judgment because Ice Zone failed to demonstrate that it had good cause for not filing a timely answer to Respondents' first amended petition. Ice Zone entrusted Ney as its registered agent to receive lawsuit-related papers in Missouri. In fact, it is undisputed that Ney was served with the original petition in this case at the address listed for him by the Missouri Secretary of State, the office which maintains such legally-required information. Yet after this case had been on file for over six months, Ney told the trial court he left Missouri from November 2020 to May 2021, became a temporary resident of Iowa, but failed to make arrangements during that time to receive any mail directed to him at his official registered agent address.

Under these circumstances, we find this conduct to be reckless as that term is used in Rule 74.05(d). Recklessness involves a deliberate choice to risk the possibility of a default judgment. *Wilderman v. Drawbond*, 267 S.W.3d 772, 775 (Mo. App. S.D. 2008). As Ice Zone's agent, Ney made a conscious choice to leave in the midst of litigation. He could have and should have arranged for the appointment of a replacement registered agent or, at a minimum, arranged to have his mail forwarded.

We now turn to Ice Zone's alternative claim that it established good cause because it relied on certain assurances by Respondents' counsel which Ney claimed he interpreted to mean that an answer was not required. Specifically, Ice Zone relies on a November 12, 2020, email from Respondents' counsel that he "looked forward to hearing your proposal" and that "[s]o far, they have not directed me to push the case." We conclude this was insufficient to satisfy good cause because there was no reference in this communication to the subject of an answer nor any assurance from Respondents' counsel that no answer was required. We note that the summons

6

served on Ney with the original petition in this case ordered Ice Zone to file its responsive pleading within 30 days after service and that upon failing to do so, "judgment by default may be taken against you..." Thus, counsel's email that he had not yet been "directed ... to push the case" may not be fairly interpreted to countermand the clear order in the court's summons that Ice Zone file an answer within 30 days.

Ice Zone also relies on a September 23, 2019, email Respondents' counsel sent in connection with the other lawsuit Respondents filed against Ice Zone for unpaid tax assessments, which was later dismissed, in which counsel wrote, "[y]ou will not need to file a responsive pleading after you are served... I will personally inform you if the situation changes and you need to defend the litigation." This specific and unequivocal assurance would certainly give us pause had it been given in *this* case, but it was not. And the trial court presumably rejected Ice Zone's good cause claim in this regard on that basis.

Ice Zone relies on *In re Marriage of Callahan*, 277 S.W.3d 643 (Mo. banc 2009), for its argument that it had good cause because it relied on Respondents' counsel and counsel misled Ice Zone. We find *Marriage of Callahan* distinguishable on its facts because in that dissolution case, husband claimed he was unaware of the litigation proceedings because wife destroyed his mail and then lied about it. *Id.* at 644. Moreover, we find nothing counsel did in this case to have been misleading or otherwise improper as illustrated by counsel mailing the notice of hearing on the default judgment to Ice Zone's registered agent and then calling him the night before the hearing to alert him to what was transpiring.

2.      **Improper service of Respondents' first amended petition.**

In its reply brief and at oral argument, Ice Zone raised for the first time in this case that Respondents' service by regular mail on Ice Zone of its first amended petition was defective in

7

that Respondents failed to adhere to Rule 43.01(a) which required service by *summons* since the amended petition asserted "new or additional claims for relief." We agree that this provision is relevant here because Respondents added to their amended petition an additional year of unpaid tax assessments which, in our judgment, satisfies the "new or additional claims for relief" referenced in Rule 43.01(a). *See Staab v. Thoreson*, 579 S.W.2d 414, 420 (Mo. App. S.D. 1979). Consequently, service of the first amended petition here was defective. But that defense has been waived by Ice Zone's failure to raise the defense of insufficiency of service of process in the trial court. Rule 55.27(g).

We first address Respondents' faulty service of the first amended petition before we address Ice Zone's waiver of that defense. Since Ice Zone was properly served with the original petition and then went into default when it failed to file a timely answer, Rule 43.01(a) controls because the amended petition added new or additional claims. Normally, when a defendant has been served *and* files a timely answer, Rule 55.33(a) controls the procedures applicable to service of an amended petition. The key difference between these two rules in this context is the type of service on the defendant that is required. When the defendant is in default and the amended petition adds "new or additional claims," Rule 43.01(a) requires the plaintiff to obtain a summons and have it served with the amended petition pursuant to Rule 54.13(b). But when the defendant is not in default, Rule 55.33(a) and Rule 43.01(c)(2)(A) allow the plaintiff to serve the amended petition by mail among other methods.

It appears here that Respondents served Ice Zone by mail with the first amended petition as if Ice Zone was not a party in default. This was ineffective service. Again, in the context of a defendant which is in default, Rule 43.01(a) requires an amended petition, which adds new or

8

additional claims to a lawsuit, to "be served upon them in the manner provided for service of summons."[5]

Nevertheless, Ice Zone waived this defense by failing to raise it before the trial court in any way including in a motion pursuant to Rule 55.27(a), in an answer, or in its motion to set aside the default judgment and therefore it is not preserved for review. *Plasmeier v. George*, 575 S.W.3d 485, 488 (Mo. App. E.D. 2019); Rule 55.27(g). Although Ice Zone raised the issue of insufficient service of process in its reply brief, this is too late and its failure to raise it before the trial court results in its waiver. *See Hinton v. Proctor & Schwartz, Inc.*, 99 S.W.3d 454, 461 (Mo. App. E.D. 2003).

We recognize the important policies favoring the resolution of lawsuits on the merits and disfavoring default judgments. *Plasmeier*, 575 S.W.3d at 487. Those policies, however, must be considered together with the countervailing and fundamental policy on which the administration of justice rests—that parties obey and respect orders of the court to appear or respond or otherwise to take some action. *Id.*; *see Stradford v. Caudillo*, 972 S.W.2d 483, 486 (Mo. App. W.D. 1998) ("When a litigant chooses to ignore or act in reckless disregard of the rules and procedures set out for the orderly administration of the judicial process, he cannot then be heard to complain when he receives no relief under its rules, particularly Rule 74.05(d).") *Plasmeier*, 575 S.W.3d at 487.

---

[5] At oral argument, Respondents asserted that Ice Zone was properly served under Rule 43.01(c)(2)(A). We disagree and find that that portion of the rule is inapplicable to the required service on a defaulted defendant which Rule 43.01(a) already specifically provides for.

9

Thus, the trial court did not abuse its discretion when it concluded that Ice Zone failed to establish the element of good cause to set aside the default judgment. Additionally, because this issue is dispositive, we need not consider whether Ice Zone established a meritorious defense.[6]

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

James M. Dowd, Judge

Michael E. Gardner, P.J., and
Lisa P. Page, J., concur.

---

[6] Prior to submission of this case, Ice Zone abandoned its argument that the trial court lacked subject matter jurisdiction.